IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAWN SANDERS, | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:15-cv-500-RP |
| WALKINGSPREE USA, LTD, | § § § | |
| Defendant. | § § | |

**ORDER**

The Court held a bench trial in this matter on January 17, 2017. On January 26, 2017, the parties submitted written closing arguments, (Pl.'s Closing Br., Dkt. 56; Def.'s Closing Br., Dkt. 58), and proposed findings of fact and conclusions of law, (Pl.'s Prop. Findings, Dkt. 57; Def.'s Prop Findings, Dkt. 59). Having considered the evidence and testimony presented at trial, the arguments of counsels, the briefing, and the governing law, the Court enters the following findings of fact and conclusions of law.

## I. Background

### A. Procedural Background

On May 15, 2015, Plaintiff Dawn Sanders filed this lawsuit in state court alleging her former employer, Defendant Walkingspree USA, LTD ("Walkingspree"), misclassified her under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and consequently failed to pay her overtime. (Orig. Pet., Dkt. 1-1). Walkingspree timely removed the case to this Court, asserting federal question jurisdiction. (Notice of Removal, Dkt. 1). On August 11, 2016, Defendant filed a motion for summary judgment arguing that Plaintiff was not entitled to overtime pursuant to the FLSA's administrative employee exemption. (Mot. Summ. J., Dkt. 11). The Court granted Defendant partial summary judgment on two elements of the administrative employee exemption, but allowed the case

1

to proceed to a bench trial on the remaining element: whether Plaintiff's primary duties included the exercise of independent judgment and discretion with respect to matters of significance. (Order, Dkt. 25).

On November 10, 2016—four days prior to trial—Defendant's counsel filed a motion to continue, asserting that he recently discovered a conflict of interest that disqualified him from representing Defendant in this matter. (Mot. Continue, Dkt. 30). The Court granted the motion to continue and provided Defendant an opportunity to find new counsel. (Order, Dkt. 32). The Court held a status conference on January 6, 2017, at which point Defendant had failed to retain substitute counsel. At the conference, the Court directed Defendant's existing counsel to file a motion to withdraw, which was subsequently filed and granted. (Mot. Withdraw, Dkt. 40; Text Order, Jan. 10, 2017). The Court also reset the trial for January 17, 2017. (Order, Dkt. 37).

On January 12, 2017, Attorney Jamie Whitney filed an appearance on behalf of Defendant, (Dkt 41), a motion to continue the upcoming trial, (Dkt. 42), and a motion for leave to file a third-party complaint, (Dkt. 43). Defendant's proposed third-party complaint asserted a claim for indemnification against ADP TotalSource, Inc., a Professional Employer Organization retained by Defendant. (Dkt. 43). The Court denied both motions. (Order, Dkt. 46).

On January 13, 2017, Defendant filed a motion to exclude the testimony of two of Plaintiff's witnesses, arguing that the witnesses were not timely disclosed under the Local Rules. (Dkt. 47). The Court granted the motion. (Dkt. 54).

On January 17, 2017, the Court held a one-day bench trial. The Court heard testimony from Plaintiff Dawn Sanders and Defendant Walkingspree's founder and CEO, Hiran Perera. After the conclusion of Sanders's testimony, Defendant filed a motion for judgment on partial findings, pursuant to Federal Rule of Civil Procedure 52(c), (Mot. J. Pl.'s Exempt Status, Dkt. 50), which the Court denied, (Order, Dkt. 54).

**B. Factual Background**

The basic facts of Plaintiff's employment at Walkingspree are undisputed. Walkingspree's founder and CEO, Hiran Perera, hired Plaintiff in 2008 to provide accounting and bookkeeping services. Plaintiff originally worked part-time and was classified as an independent contractor. In 2008, Plaintiff was upgraded to full-time status. In 2011, Walkingspree retained Insperity, a Professional Employer Organization, to manage its payroll and provide advice on HR issues. After Insperity was brought on, Plaintiff was converted from an independent contractor to an ordinary W-2 employee. For the first few months after this conversion, Walkingspree classified Plaintiff as FLSA non-exempt and paid her overtime. In August of 2011, Perera reclassified Plaintiff as FLSA exempt under the administrative employee exemption. In May 2014, Walkingspree terminated Plaintiff's employment. At issue in this case, is whether from August 2011 until May 2014, Plaintiff was properly classified as an exempt administrative employee.

## II. Administrative Employee Exemption

The FLSA requires employers to pay overtime to employees who work more than forty hours in a given week. 29 U.S.C. § 207(a)(1). Overtime must be paid at a rate of at least one and one-half times the employee's regular hourly rate. *Id.* Some employees are exempt from the FLSA's overtime requirement. Relevant here, "bona fide . . . administrative . . . employees" are exempt and therefore do not have a right to overtime compensation. 29 U.S.C. § 213(a); *see also* 29 C.F.R. § 541.200. An employee is exempt under the administrative employee exemption when: (1) the employee is paid on a salary or fee basis at a rate of not less than $455 per week; (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(1)-(3).

The Court previously awarded Defendant summary judgment on the first two elements of the administrative employee exemption, 29 C.F.R. §§ 541.200(1)-(2), and therefore established, pursuant to Federal Rule of Civil Procedure 56(g), that Plaintiff was paid on a salary basis at a rate not less than $455 per week and that her primary duty was the performance of office or non-manual work directly related to Defendant's general business operations. (Order, Dkt. 25, at 4, 8). The sole question at issue in the bench trial was thus whether Defendant satisfied its burden of demonstrating by a preponderance of the evidence that Plaintiff's primary duty at Walkingspree included the exercise of discretion and independent judgment with respect to matters of significance. *See*

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. § 541.700(a). The FLSA's implementing regulations specify four factors that are to be considered when determining an employee's primary duty: (1) the relative importance of the employee's exempt duties, (2) the amount of time the employee spends performing exempt work, (3) the employee's relative freedom from direct supervision, and (4) the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.* "[T]he employee's primary duty will usually be what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time." *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1227 (5th Cir. 1990).

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards . . . . [It] does not include clerical or secretarial work, recording or

4

tabulating data, or performing other mechanical, repetitive, recurrent or routine work." *Id.* § 541.202(e). "The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However . . . the term . . . does not require that the decisions . . . have a finality that goes with unlimited authority and a complete absence of review." *Id.* § 541.202(c).

The evidence presented at trial suggests Plaintiff's duties at Walkingspree were varied and fluctuated over the course of her employment. In an email she sent after her employment was terminated, Plaintiff referred to her "duties in accounting, inventory control, HR, purchasing and office administration." (Ex. D-9). While her responsibilities were wide-ranging, the evidence suggests they were genereally clerical in nature. Plaintiff testified that that the bulk of her responsibilities were related to bookkeeping and office administration. She further testified that the majority of her time was spent entering data into QuickBooks, which is an accounting software program. Her other key duties included executing HR related paperwork and handling customer returns of defective products. Plaintiff did not attend management meetings and she was not involved in formulating Walkingspree's policies and procedures.

Plaintiff was, at least with regard to a few discreet matters, afforded some degree of discretion and independence. For example, Plaintiff testified that she was responsible for sending replacement batteries to some of Walkingspree's customers. In order to fulfill this responsibility, every four to six months, Plaintiff hired a handful of temporary independent contractors to help address envelopes and stuff them with batteries. However, this was not an ongoing project and does not appear to be representative of her day to day duties at Walkingspree. On a few occasions, Plaintiff played some role in helping select outside vendors, including Walkingspree's Professional Employer Organization, its outside fulfillment house, and its accountant. Per Perera's own testimony, Plaintiff's role in selecting these vendors was mostly limited to conducting research and

5

providing input. Perera retained ultimate decision-making authority. The record includes substantial documentary evidence suggesting that Perera closely supervised, directed and scrutinized all of Plaintiff's work and that any decision she made ordinarily required his prior approval. (*See* Ex. P-5).

Having reviewed all of the evidence and testimony presented at trial, the Court finds that the principal value Plaintiff provided to Walkingspree derived from her performance of bookkeeping, data entry, and other clerical tasks. The Court further finds that Plaintiff's responsibilities were limited to applying techniques, procedures, and standards established by Perera and Walkingspree's other executives and that her work was performed pursuant to careful direction and subject to close supervision. In light of these findings, the Court concludes that Plaintiff's primary duty while employed at Walkingpree did not include the exercise of discretion and independent judgment with respect to matters of significance. Accordingly, Defendant has failed to meet its burden to demonstrate that Plaintiff was properly classified as exempt from the FLSA's overtime requirements under the administrative employee exemption.

### III. Relief

Plaintiff requests an award of actual damages, liquidated damages, costs and attorneys' fees. Before calculating the amount of damages, the Court must address three threshold issues: first, whether a one- or two-year statute of limitations applies; second, whether liquidated damages are appropriate; and third, whether the tradition method of calculating overtime pay or the fluctuating work week method should be employed.

#### A. Statute of Limitations

"Generally, FLSA claims are subject to a two-year statute of limitations, however the limitations period is three years for willful violations." *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016) (citing 29 U.S.C. § 255(a)). Plaintiff has the burden of demonstrating willfulness. *Id.* To meet that burden, Plaintiff "must demonstrate that an employer 'knew or showed reckless

6

disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34 (1988)). To have acted with reckless disregard, an employer generally must have "ignore[d] complaints brought to their attention." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). "[N]either knowledge of the FLSA's potential applicability nor negligent or unreasonable conduct necessarily establishes willfulness." *Id.*

There is no evidence in the record that Perera knew Plaintiff was misclassified under the FLSA. There is also no evidence in the record that anyone ever complained to Perera that Walkingspree was not complying with the FLSA. There is however, some evidence, that Perera could have been more careful in overseeing and applying Walkingspree's HR policies. For example, Perera testified that he originally hired all of Walkingspree's American employees as independent contractors to save money, but later decided to treat them as W-2 employments in order to fulfill the requirements of an alternate visa that would allow him a path to citizenship. This testimony suggests that Perera's decision-making related to the legal status of his employees was sometimes inappropriately informed by considerations other than strict adherence to the law. Moreover, when Perera decided to reclassify Plaintiff as FLSA exempt after her first three months of full-time employment he was provided a form by Insperity, Walkingspree's Professional Employer Organization. He originally checked boxes on that form indicating that Plaintiff was paid on a salary basis and that her primary duty included office or non-manual work, but failed to check a third box indicating that Plaintiff's primary duty included the exercise of discretion and independent judgment. (Ex. P-7). Perera testified that he did not understand all three boxes needed to be checked to satisfy the requirements of the administrative employee exemption. (*Id.*) After being told he needed to check the third box, he corrected the form and returned it to Insperity. It is possible that the form as initially completed reflected Perera's honest assessment of Plaintiff's duties and that he therefore did not hold a good faith-belief that Plaintiff satisfied the requirements of the administrative employee

7

exemption. It is also possible that Perera simply completed the paperwork in a rushed and careless manner. Accordingly, the Court concludes this evidence is insufficient to support a finding that Perera acted with reckless disregard for his obligations under the FLSA.

There is other evidence in the record suggesting Perera took reasonable efforts to ensure compliance with the FLSA. Most importantly, Perera did not decide to reclassify Plaintiff as FLSA exempt on his own initiative. Rather, he was contacted by Diane Young, an employee of Insperity, who informed him that Plaintiff was classified as non-exempt and recommended that she should be reclassified. Perera testified that in deciding how to classify Walkinsgpree's employees under the FLSA he always deferred to the advice of the Professional Employer Organizations retained by Walkingspree. Notably, some of Walkingspree's employees, including its customer service representatives, were, while Plaintiff was employed at the company, classified as FLSA non-exempt and properly paid overtime.

In light of all this evidence, in particular the evidence indicating Plaintiff was reclassified at the suggestion and based on the recommendation of an outside counselor, the Court concludes Plaintiff has failed to demonstrate that Defendant willfully violated the FLSA.

**B. Liquidated Damages**

Plaintiff also requests an award of liquidated damages. Generally, the FLSA "mandates" that a plaintiff awarded in the amount of unpaid overtime compensation also be awarded liquidated damages in an equal amount. *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (citing 29 U.S.C. 216). Effectively, the liquidated damages provision doubles the amount of relief available to an FLSA plaintiff. There is an exception to this rule in cases where the defendant is able to satisfy the "substantial burden" of demonstrating "that its acts giving rise to the suit are both in good faith and reasonable." *Id.* (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990)). The liquidated damages question is similar to the statute of limitations question. However, while "the

employer has the burden of demonstrating good faith and reasonableness to avoid assessment of liquidated damages, the employee has the burden of demonstrating willfulness for the three-year limitations period to apply." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015). Ultimately, the decision of whether to award liquidated damages is within the discretion of the tiral court. *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003)

For essentially the same reasons that the Court finds Plaintiff is not entitled to a three-year statute of limitations, the Court also concludes Plaintiff is not entitled to liquidated damages. First, Defendant has submitted compelling evidence that he acted in good faith. In particular, he testified that his decision to classify Plaintiff as exempt was made in reliance on the recommendation of Walkingspree's Professional Employer Organization and that when making FLSA classification decisions, he consistently deferred to the guidance provided by outside advisors. In the Court's view, this evidence outweighs the evidence put forward by Plaintiff suggesting that when Perera completed the reclassification paperwork he initially declined to check all of the necessary boxes indicating Plaintiff met the requirements of the administrative exemptions. As discussed above, this evidence, while consistent with a finding of bad faith, is also consistent with a finding that Perera simply completed the paperwork in haste. Moreover, the evidence that Perera's decisions regarding whether to classify Walkingspree's staff as independent contractors or W-2 employees were made based on improper financial or immigration-related factors is similarly not dispositive. Perera's intentions and motivations related to previous, unrelated HR decisions do not directly bear on the classification decision at issue here. In fact, the record suggests that Walkingspree's decision to retain Insperity was in part due to a recognition that the company had acted carelessly in the past and needed to make a good faith effort to ensure legal compliance going forward. As part of that good faith effort to ensure compliance, Perera deferred to Insperity's advice on FLSA classification

decisions. Accordingly, the Court finds that Perera acted in good faith when he decided to classify Plaintiff as FLSA exempt.

The Court also finds that Perera acted reasonably. Plaintiff's duties at Walkingspree were wide-ranging and evolved along with the company. As such, the nature of her primary duty was not obvious. As the Court noted above, some of her duties clearly did involve the exercise of some degree judgment and discretion. Specifically, she regularly managed a battery fulfillment project that required hiring and overseeing independent contractors and she was involved in some high-level decisions. Having weighed all the evidence, the Court concluded that these limited and heavily-supervised activities did not warrant finding that Plaintiff's primary duty included the exercise of discretion and independent judgment with regard to matters of significant. Nonetheless, the Court concludes there was a reasonable basis for believing that Plaintiff was properly classified as an exempt administrative employing.

Having found that Perera's decision to classify Plaintiff as FLSA exempt was reasonable and made in good faith, the Court concludes she is not entitled to liquidated damages.

## C. Fluctuating Work Week

Defendant argues that damages should be calculated using an alternative method known as the fluctuating work week. As a general rule, "[t]he FLSA sets the standard workweek at forty hours and requires employers to pay non-exempt employees no less than one and one-half times their regular rate of pay for any hours worked in excess of forty." *Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) (citing 29 U.S.C. § 207(a)(1)). The fluctuating work week "is one method of satisfying the FLSA's overtime pay requirement" that provides for "an employment arrangement in which an employee receives a fixed weekly pay for a fluctuating work schedule with a varying number of hours worked each week." *Id.* Such an arrangement is permitted if: (1) "the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable

minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest," and (2) if the employee "receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay." 29 C.F.R. § 778.114(a).

"The decision of when and how to apply the [fluctuating work week]'s half-time formula in misclassification cases has divided the federal courts." *SettlePou*, 732, F.3d at 497 (collecting cases and explaining the disagreement among appellate courts). The Fifth Circuit has held that fluctuating work week method of calculating overtime pay may be used to measure damages in some misclassification cases, but has made clear that it is not appropriate in every instance where the employee agrees to receive a salary rather than hourly wages. *Id.* at 498-500. The method "may only be applied to calculate overtime premiums when there is a contractual agreement between the employer and the employee that the employee will be paid a fixed weekly wage for hours that fluctuate from week to week." *Id.* at 500. In determining whether an employee entered into such an agreement, courts are directed to look to "[t]he parties' initial understanding of the employment arrangement as well as the parties' conduct during the period of employment." *Id.* at 499.

Here, Plaintiff was initially hired as a part-time employee and later updated to full-time status. Plaintiff's initial employment agreement, for part-time, hourly work, states that she would be free to determine the hours of the day during which she would work, but says nothing about whether the total number of hours she was expected to work would fluctuate from week to week. (Ex. P-1). Plaintiff testified that when she became a full-time employee she understood that her schedule would become more structured and that she would be paid a fixed salary for forty hours of work per week. Perera, on the other hand, testified that he expected Plaintiff to work as long as necessary to get the job done. However, in his deposition Perera testified that he assumed Plaintiff was working a forty hour week, but added that "if she worked extra to get the job done, that was

11

normal and expected." (Ex. D-8, at 20). Reminded of his deposition testimony, Perera stated that he assumed she was working forty hours per week because her position was full-time.

In light of this testimony, the Court finds that both Plaintiff and Perera understood and agreed that Plaintiff's would work a regular forty-hour work week. The record suggests that in actuality Plaintiff's hours fluctuated significantly and that she rarely, if ever, worked only forty hours. However, what matters is the nature of the agreement, not how matters played out in the end: "The critical issue . . . is not only whether [the employer] *paid* [the employee] a fixed salary for varying hours, but whether [they] had *agreed* that a fixed salary would compensate [the employee] for all of the hours she worked each week." *Id.* at 501 (emphasis in original). Accordingly, the Court employs the traditional method of calculating FLSA damages, awarding overtime compensation of one and one-half times the regular rate of pay.

### D. Damages Calculations

Plaintiff testified that she recorded the number of hours she worked each day on her calendar and has submitted her calendars as evidence into the record, (Ex. P-2). She has also submitted a spreadsheet tabulating the data from the calendars and calculating the amount of overtime she worked for each week while employed at Walkingspree. (Ex. P-4). At trial, Defendant did not present any evidence to dispute the accuracy of the hours recorded by Plaintiff. Defendant used these hours as inputs into its own damages calculation and submitted into the record two spreadsheets, one replicating Plaintiff's calculations using the traditional one and one-half time overtime rate, (Ex. D-11), and another calculating overtime using the fluctuating work week's half time overtime rate, (Ex. D-12).

In an FLSA action, the statute of limitations for a named plaintiff runs from the date that the plaintiff files the complaint. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916–17 (5th Cir. 2008). Plaintiff's original state court petition was filed on May 15, 2015. (Dkt. 1-1). Applying a two-year

12

limitations period, *see* supra Section III.A, Plaintiff has a right to damages to any cause of action that accrued May 15, 2013 or later. "A cause of action under the FLSA accrues at each regular payday immediately following the work period during which the services were rendered for which the overtime compensation is claimed." *Mata v. Caring For You Home Health, Inc.*, 94 F. Supp. 3d 867, 878 (S.D. Tex. 2015) (citing *Halferty v. Pulse Drug Co.,* 821 F.2d 261, 271 (5th Cir.1987)). Plaintiff's last regular payday while employed at Walkingspree occurred on May 15, 2013 and was for the pay period beginning May 1, 2013. (Ex. P-3). Accordingly, Plaintiff has a right to any unpaid overtime from May 2013 forward.

Defendant's tabulation of Plaintiff's damages, using the traditional method of calculation, shows a total of $54,577.69 in unpaid overtime for the period beginning on May 13, 2012 through the end of Plaintiff's employment on May 31, 2014. (Ex. D-11). However, $22,496.75 of this overtime pay accrued prior to April 28, 2013 and therefore clearly falls outside the limitations period. Another $590.63 is listed for the week beginning April 28, 2013 and ending May 4, 2013, and therefore falls partially within and partially outside the limitations period. Plaintiff's calendars indicate she did not exceed forty hours of work in this week until May 2, and thus would not have been due overtime until the May 13 payday, which falls within the limitations period. (Ex. P-2). Accordingly, the Court subtracts $22,496.75 is time-barred overtime pay from the $54,577.69 in total overtime pay, and concludes Plaintiff is due a total of $32,080.94 in unpaid overtime compensation.

 IV. Conclusion

Based on the foregoing findings of fact and conclusions of law, the Court hereby **ORDERS** that judgment be entered in favor of Plaintiff Dawn Sanders and against Defendant Walkingspree USA, LTD in the amount of $32,080.94 in unpaid overtime compensation.

Plaintiff is also entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(a). A motion for attorneys' fees may and a proposed bill of costs may be filed no later than fourteen days after the entry of final judgment, pursuant to Local Rule CV-7(j)(1) and Local Rule CV-54(a).

**SIGNED** on February 17, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE